By the Court. Bosworth, J.
When the three executions first named in the complaint were returned, the execution in favor of Toler was in the sheriff’s hands unreturned. It was regular on its face, and assuming it to he valid, it was the duty of the sheriff to apply upon it any surplus remaining, after satisfying the execution in favor of Vyse. Assuming the Toler execution to be valid, and that it had not lost the priority which its prior delivery acquired, the return made to each of the three executions, by virtue of which the plaintiff claims, was a true return. Purdy had no property out of which any part of either of those three executions could be collected.
The mere fact, that the judgment in favor of Toler was Confessed to secure as well a debt owing to Olsen, as one owing to Toler, did not render it void (Truscott v. King, 6 Barb. S. C. R. 346; Bank of Utica v. French, 3 Barb. Chan. R. 293; Livingston v. Tracy, 6 J. R. 165). Nor is there any such evidence of an effort to collect more upon it than was due to the two, as would justify the sheriff in acting upon the presumption that it was confessed with an intent to defraud creditors, or would authorize a jury to find, or the court to declare, that it was confessed with such an intent.
Is there any such evidence of interference by the plaintiff in the Toler execution, or by his attorney, to delay a sale, or to give indulgence to the judgment debtor, as in judgment of law will deprive it of its priority ?
Prior to December 27,1847, there is no evidence of anything more than mere acquiescence on the part of Toler, in the delay to sell up to that time. His execution was returnable on the 17th of December, 1847. The sheriff could not have been coerced to sell sooner than on that day. If he had sold and returned the execution on that day, he would have completed its execution within the time allowed by law. On the 27th of December, after the lapse of ten days from the return day, the attorney of the plaintiff in the Toler judgment, and also the attorney in the Magher judgment, and the attorneys of the plaintiffs in two other judgments, consented that the sale under their executions might be adjourned thirty days, without prejudice to any party. This consent was sent to the deputy sheriff, and not to the judgment debtor. Why it was obtained or *380 given is not shown, The court has no fact before it, but the fact that such a consent was given, The paper does not, in terms or by implication, authorize the sheriff to leave the property with the judgment debtor, or absolve him from liability for its safe keeping. It would, perhaps, be an answer to an action by either of them against the sheriff for not returning his execution within those thirty days. It merely permits him, in his discretion, to adjourn, the sale thirty days, which implies that he had already given notice of a sale to be had under these executions. There was no agreement for delay between either of those plaintiffs and the judgment debtor. The consent, standing alone, would seem to amount to no more than a declaration on the part of those giving it, that they would acquiesce in a further indulgence for the period of thirty days, but it is not an agreement with the debtor that he shall have such indulgence, or the use of the property for that period. Certainly it does not instruct the sheriff to delay the sale.
In Russell v. Gibbs (5 Cowen, 395), the court remarked l " But to say that an implied indulgence of six months, when Uo other creditor Was pressing, is such a culpable negligence as to become per se evidence of a fraudulent intent to cover the defendant’s property, and to delay and hinder his other Creditors from collecting their just debts, wotild be judging very harshly of the motives of om‘ fellow-citizens, and inculcating a degree of rigor, which may become highly oppressive to Unfortunate debtors.”
In Benjamin v. Smith (4 Wend, 332), Eathbüñ & Hunt, in March, 1827, directed the sheriff not to sell on an execution in their favor, which he had levied on the property of the debtor. Until the first of July, After the first of July, their conversations with the deputy induced him to believe, and act on the belief, that he Was to have further orders before acting, and the court thought such an inference might be drawn by the jury, and if drawn, the execution would be dormant as against one levied on the 23d of October, 1847. The Court said, that the proper instruction to be given to the jury on a new trial was, that they should “ find the first execution dormant, or fraudulent, as to the execution of the plaintiff, if the delay on it, *381 down to the time of the sale, was occasioned by the interference of the plaintiffs therein.”
In Benjamin v. Smith, the court refers to Russell v. Gibbs, as containing an accurate statement of the principles applicable to this point, Benjamin v. Smith again came before the court, after it had been tried a second time. On the second trial the jury were instructed, in conformity with the rule laid down in 4th Wend, 336, and found a verdict for the defendant. The court said the verdict could not be interfered with, on the ground that, that fact was found " against the weight of evidence, There was sufficient doubt in the case to preclude the interference of the court with the finding of the jury,” (13 Wend. 406.)
Where the lapse of time has not been so great, as of itself to justify an inference, that the prior execution was used as a mere cover to protect the debtor’s property, something more' than mere acquiescence in the property being left with the debtor, or an express permission to so leave it, or an acquiescence in a delay to sell, whether that acquiescence be implied or expressed, is necessary to raise an inference that the prior execution is fraudulent.
Where there has been no agreement with the debtor for further time, nor any instructions to the sheriff to delay a sale, nor interference to prevent him from discharging his duty, a delay, on his part, to sell for forty-seven days, after the return day of the execution, acquiesced in by the plaintiff will not, of itself, authorize the jury to find, or the court to declare, the prior execution dormant, or what is treated as the same thing, fraudulent.
Rew v. Barber (3 Cowen, 280): This is the extent of the proof given, or offered on this point.
If the Toler execution had become dormant, the Magher execution, on which the plaintiffs claim, had also become dormant, as the attorney in that consented to the adjournment. Hence the plaintiffs, in order to establish a right to have the execution issued on the judgments recovered in their favor, declared to be entitled to a priority, must concede that the Magher execution, by virtue of which they also claim to recover, became dormant or fraudulent as to their other two *382 executions, by reason of the consent to the adjournment of the sale.
We do not think that the proof given shows primd facie, that either execution had become dormant, or fraudulent, as to either of the junior executions.
The important question presented by the record is, was it competent for the plaintiffs to show, in this action, that the Toler judgment was confessed with intent to hinder, delay, and defraud the creditors of Purdy ?
It is a general rule, that a sheriff who receives a process issuing out of a court of general jurisdiction, and regular on its face, is bound to execute it. Though it may be voidable, it is not so at his election, but only at the election of the party affected by it. If not void, but irregular only, it is a protection to him, and he must obey its mandate. (Parmele v. Hitchcock, 12 Wend. 96; Saracool v. Boughton, 5 Wend. 170.)
Process regular on its face, though in fact void for the reason that the pre-requisites to conferring jurisdiction were not complied with, will protect the officer acting under it from an action by the party against whom it is issued. Yet the party at whose instance it was issued cannot justify under it, nor maintain an action against the officer for refusing to execute it. When sued by the plaintiff he may show in his defence that the process was void, for want of jurisdiction of the court issuing it. (Horton v. Hendershot, 1 Hill, 118; Earl v. Camp, 16 Wend. 562.)
The Revised Statutes declare that every “ suit commenced, decree or judgment suffered, with the intent to hinder, delay, or defraud creditors,” as against the persons so hindered, delayed, or defrauded, shall be void. (2 R. S. 137, § 1.)
The plaintiffs’ counsel offered to show that the Toler judgment was confessed with intent to hinder, delay, and defraud the creditors of Purdy, and that the same and the execution, were and are fraudulent and void against the plaintiffs.
The reply alleged that the sheriff had notice of this fact before he sold on the execution.
The objection taken to the evidence offered was not that the plaintiffs’ offer was not broad enough—not that he did not also offer to show notice to the sheriff, but it was, that the bona fides *383 of the prior execution could not he inquired into in this action, and on such objection the evidence was excluded.
At a later stage of the trial the plaintiff offered to prove facts tending to impeach the bona fides of the Toler judgment, and that the defendant, before the sale, was notified by the attorney in the Magher judgment, that Magher claimed in opposition, and in preference to the claim of Toler. The court excluded the evidence.
The case shows, as I think, that the evidence was excluded expressly on the ground that the sheriff could not be charged by proof in this action—that the Toler judgment was fraudulent and void as against creditors, although the defendant was so notified before he sold on the execution.
The plaintiff insists that it was competent to prove those facts, and that proof of them would establish the falsity of the returns to the executions in question.
It is to be observed that the proof offered does not relate to the jurisdictional capacity of the court to render the judgment and award the execution; but it is offered on the assumption, that conceding such jurisdiction, the judgment may, in this action, be shown to be void, as to creditors of the debtor, though conclusive as between the parties to the record, and if so shown the sheriff will be liable.
On the assumption here made of the ground on which the evidence offered was excluded, this case presents the question —whether a junior execution creditor, in an action against the sheriff for falsely returning it nulla bona, can maintain his action by proof that a prior execution was issued on a judgment confessed with intent to defraud creditors, and of a notice to the sheriff of that fact, while both executions were in his hands, and of a claim made on that ground to have the proceeds of the property levied on applied on his execution ?
Several cases have been cited by the plaintiffs’ counsel, which are claimed to have, settled that question in the affirmative.
In Warmoll v. Young, 5 Barn. & Cress. 660, the sheriff was notified on the 29th of December, 1824, the ninth day after receiving the junior execution, to retain the proceeds of the property levied upon in his hands, as proceedings would be *384 taken to set aside the prior judgment and execution. A few days thereafter the sheriff was ruled to return the prior execution. He gave no information to the plaintiff that he had been so ruled, but paid over the proceeds to the plaintiff in the prior execution on the 31st of January, 1825.
The prior execution, and the judgment on which it was issued, were proved to be fraudulent, and the plaintiff in the previous execution was permitted to recover,
Abbott, Oh, J,, said: “ It appears to me that it was the duty of the sheriff, when served with the rule to return Knight’s writ, to inform the present plaintiffs of it, that they might corn eider whether they could take steps promptly to set aside the judgment, If he had informed them of it, and they bad taken no steps, there would have been strong ground to maintain that the sheriff was justified in obeying the process that came to his hand. Hot having so informed the plaintiffs, I think the sheriff appears to have lent himself to Knight, and therefore he must stand or fall by the right that Knight had, and Knight had no right, for his judgment was evidently fraudulent.” Bailey, J., seems to have concurred in deciding the case on this principle. He expressly says : " That the sheriff was not bound to try the question of fraud, or to decide which of the two creditors should have the preference, but he ought to have stood indifferent between the parties, and not to have lent himself to either,”
Holroyd, J., said: " I have entertained some doubt, in the course of the argument, whether the present plaintiffs ought not, in pursuance of the notice they gave to the sheriff, to have applied to the court, within the first six days of the term, to set aside Knight’s execution, and to have the money paid over to them. But I incline to think that it was the duty of the sheriff to have informed the plaintiffs before he paid the money that he had been served with the rule to return the writ,”
If Warmoll v. Young states the rules applicable to such a case correctly, then it must be considered as a principle of law, that a sheriff is not bound to decide on the lona fides of judgments on which the executions in his hands have been issued, nor wait an indefinite time for a junior execution plaintiff, to Institute proceedings to avoid a prior execution, on the ground *385 that though valid as against the parties to it, it is void as against himself.
It is distinctly declared, that the sheriff is not bound to take the risks of any such controversy. He is bound to do no act to defeat an avowed purpose of a junior execution creditor to institute proceedings to set aside the older writ. If he is distinctly notified that such proceedings will be taken, and is requested to retain the money levied until such proceedings can be had, and then pays over the money before the claimant is chargeable with laches in not applying, or under such circumstances as will implicate him, as acting in concert with the plaintiff in the older execution, he pays it over at the risk of being held liable, if the prior execution and judgment shall be proved to be fraudulent.
The notice to the sheriff, which was offered to be proved, was given before the sale of the property, which took place on the 31st of January, 1848. None of the executions belonging to the plaintiffs were returned until the subsequent June; over four months elapsed between the time the notice was given to the sheriff and the time he returned the executions.
He was not bound to wait longer than this; and he was not bound to take upon himself the risk of deciding whether the claim made was or was not well founded.
It is the duty of a junior execution plaintiff, who claims that a prior execution is fraudulent as against him, as a creditor of the execution debtor, to move without any unreasonable delay, and procure a stay upon the sheriff’s returning the prior one, until the motion can be heard and decided. Nothing of the kind appears to have been done or attempted by these plaintiffs, In making this observation, I lay out of view the evidence offered by the defendant and rejected by the court, that these plaintiffs, in May, 1848, moved the supreme court to set aside Toler and Magher’s executions as being fraudulent and void, and that the sheriff, after satisfying Vyse’s execution, pay the surplus to these plaintiffs, and that such motion was argued and denied.
I can conjecture no reason why this evidence was rejected, except that it was the opinion of the presiding judge that an action against the sheriff for falsely returning nulla Iona to a *386 junior execution would not be sustained merely by proof, that a prior judgment and execution were fraudulent as to creditors, and that the sheriff had been notified that the proceeds of the sale would be claimed by the plaintiff in the junior execution on that ground, and that therefore the evidence offered and rejected was immaterial.
Imray v. Magnay, 11 Meeson & Welsby, 273, seems to decide, that it was competent for the plaintiffs in this action to prove the execution fraudulent, when coupled with proof of notice to the sheriff that the proceeds of the sale would be claimed on that ground,
But in Remmett v. Lawrence, 1 Law and Equ. R. 260 (decided in 1850), Imray v. Magnay was doubted by the Queen’s Bench, and the decision made on it is, in our judgment, justly characterized as one “ placing a sheriff in a most perilous position, whatever course he pursues.”
In Lovick v. Crowder, 8 Barn. & Cress. 132, the sheriff was held liable. The court said, that when he found the defendant in possession of property, primó facie, it was his duty to levy on it. When he was informed that the officer of the former sheriff claimed it under a levy, it was the defendant’s duty to ask to see the warrant or execution. If he had done that, he would have known from its date, that there had been such gross delay as rendered it fraudulent and void. The most this case decides is, that when the sheriff knows of incontrovertible tacts, or by discharging his duty would ascertain the existence of such facts, which would render a prior execution fraudulent, it is his duty to treat it as such, and if he does not so treat it, he is liable to the plaintiff in the junior execution.
Fairfield v. Baldwin, 12 Pick. 388, is distinguishable from the case before us. In the former, the plaintiff in the prior attachment added, under leave of the court, new counts in addition to the two set out in his attachment. The court held, that this, as matter of law, vacated the attachment as against a subsequent attaching creditor. On the day execution was issued on the judgment recovered in that action, Fairfield notified the sheriff that the attachment, if ever valid for any purpose, had been discharged by “ such proceedings as had since been had in that suit,” and that, as the next attaching creditor, he should *387 claim to hold the goods attached to satisfy any judgment that might he recovered in his action. Fairfield prosecuted his suit diligently to judgment and execution, and required the sheriff to levy the execution on the property attached. Baldwin, however, returned that the property had been applied in part satisfaction of the execution in the first attachment suit, and returned Fairfield’s execution in no part satisfied.
If the amendments, adding causes of action to those stated in the attachment itself, had the effect, as matter of law, to vacate the first attachment as against one levied subsequently, but before the amendments, then the sheriff who executed both writs, when notified that such proceedings had been had in the first suit as to produce this result, was notified of a fact, or had such notice that on inquiry he might easily have ascertained the existence of a fact in itself incontrovertible, which made it his duty to apply the proceeds of the attached property on the plaintiff’s execution: this would decide the whole case, on the principle on which Lovick v. Crowder was decided.
The plaintiff was also permitted to prove that the prior judgment was fraudulent, on the ground that part of the sum recovered was not justly due. This was allowed, notwithstanding that suit was defended by the present plaintiff, under a statutory provision, allowing a subsequent attaching creditor to defend. The court, in its opinion on this branch of the case, lay stress upon the fact that the sheriff sold the goods under the first attachment, before a judgment was recovered, notwithstanding Baldwin had notified him he should resist the claim in that case as fraudulent, and also objected to any sale being made until judgment should be rendered in due course of law. This part of the opinion proceeds on the ground that the acts of the sheriff indicated that he had attempted to aid the views of the creditor first attaching, and the court said “ he must stand or fall according to the rights of the party to whom he has lent his aid.” The ground on which the decision relating to this branch of the case was placed, is the same that governed the court in the decision of Warmoll v. Young. It is not an authority for the proposition that a sheriff holding two executions, who is notified by the owner of the junior one, that he shall insist that the junior one is issued on a judgment *388 fraudulent as against creditors, is bound to incur the risks of a litigation of that point, or to hold the proceeds of the property levied on an indefinite period of time, at the peril of being charged, by the junior execution creditor with the consequences of a false return, if he applies the money to satisfy the one first levied, and returns the ocher nulla bona. Ho such general proposition is affirmed by the court; on the contrary, its decision is placed on different grounds.
Saunders v. Sheriff of Middlesex (3 Barn. & Ald. 95) was decided on the ground that it was the sheriff’s own fault, that the moneys realized by a sale of property of the judgment debtor, had been ordered to be paid to the debtor by a rule of court; that the court would not have made such a rule if the fact had been made known to it, that the sheriff held an execution in favor of the plaintiff, and would have modified the rule on a motion based on affidavit of such a fact.
We are agreed in the opinion, that the plaintiffs cannot maintain this action, by giving the proof offered and rejected, relative to the Toler judgment having been confessed with an intent to defraud creditors.
A more serious difficulty is presented by other undisputed facts appearing in the case. The sheriff has in his hand $52.24, part of the proceeds of the property levied on while the executions belonging to the plaintiffs were in his hands, to which moneys he makes no personal claim, but which, as his reply states, are to be applied on the Toler execution. Besides the amount necessary to pay for the services for which compensation is specifically prescribed by the statute, he has in his hands the further sum of $439.76, which he claims the right to retain to his own use, to satisfy certain charges which are enumerated in the complaint.
It is not necessary to discuss the question whether he has a right to retain all or any part of the $439TW
If not entitled to retain the whole of it, his position as to the part he is not entitled to retain is the same as to the $52.24.
He is sued for falsely returning nulla bona to the plaintiff’s executions. The plaintiff make aprima fade case, by showing that he holds moneys which are the proceeds of defendant’s property, sold while these executions were in his hands. The *389 sheriff meets this claim by showing that he received an execution in favor of Toler, against the same debtor, prior to 1ns receipt of those belonging to the plaintiff. If that execution was still in his hands, it would be a prima fade defence to this action. But he had returned that nulla bona before this action was brought. The defence is simply this: he is not liable to the plaintiff, because he has falsely returned mulla bona to a prior execution, when his duty required him, as between the execution creditors, to have applied the surplus on the Toler execution, and to have returned it satisfied pro tanto.
Can a sheriff protect himself against such an action, under a prior execution so returned? Is he at liberty to say this return is true, because another return is false, or to protect himself from the consequences of a return apparently false, by showing another return to be actually so ?
In Towne v. Crowder, 2 Car. and P. 356, Best, Ch. J., held that he could not.
There may be many reasons to justify such a return, notwithstanding the priority of the Toler execution. If the Toler judgment was fraudulent as against the plaintiffs, the sheriff, if he saw fit to do so, was at liberty to return it nulla bona, and if sued for a false return, could protect himself by proof of the plaintiff’s judgments and executions, and that the judgment in favor of Toler was confessed with intent to hinder, delay, and defraud the creditors of Purdy. (Shattock v. Carden et al., 11 L. & Eq. R. 570; Pierce v. Jackson, 6 Mass. 242; Lovick v. Crowder, supra.)
If the sheriff was notified that the Toler judgment was fraudulent and void as against the plaintiffs, and that they should, on that ground, insist on having the proceeds of the sale applied on their executions, the sheriff, if cognizant of facts.which would incontrovertibly establish the fraud, not only had the right, but it was his duty to return the Toler execution unsatisfied. Whatever may be the reason which induced him to so return it, we are satisfied that he cannot defend this action by showing that return to be false.
To justify under a levy by a prior execution, he must either have executed such execution by an application upon it of the proceeds of the property sold, or have it in his hands unre *390 turned. If he has neither executed it, and applied the proceeds of the property upon it, nor has it in his hands, so that he is bound and has authority to execute it, and make such application, but, on the contrary, has returned it nulla lona, he is'not at liberty to say in such an action, that the return is false, that it was his duty to have applied the money on the execution, against his return, that it was not his duty, and that, therefore, the present plaintiffs are not entitled to recover. On this ground, a new trial must be ordered, with costs to abide the event.