## HAMBLET *v.* CITY INS. CO.

*(District Court, W. D. Pennsylvania. July 13, 1888.)*

1. MARINE INSURANCE—WHEN CONTRACT EFFECTED—MAILING POLICY.
    Where the correspondence between an applicant for insurance and the insurance company shows that the minds of the parties never met with respect to the terms of the proposed contract, the insurance company does not become bound by mailing to the applicant a policy of insurance which the applicant is not bound to accept.
2. SAME—APPLICATION—CONCEALMENT OF FACTS.
    At the time of application to an insurance company at Pittsburgh, Pa., for insurance on a steam-boat, the boat was tied up in White river, Ark., for repairs, and was without master, officers, or crew, having been so seriously injured by a collision with a bridge pier as to be unable to run at all. Nearly the whole of one side of the boat, including the wheel, was torn away, and her upper works were badly damaged. While in this condition, and within a few hours after the alleged insurance was effected, she was destroyed by fire. *Held*, that the above facts materially affected the risk, and, having been concealed from the insurance company, there could be no recovery against the company.
3. SAME—CONCEALMENT BY INSURANCE BROKER.
    A broker employed to procure insurance, must be regarded in that matter as the agent of the person who so employed him; and his concealment from the underwriter of any material fact, whether the suppression be willful or unintentional, is the concealment of his principal.

In Admiralty.

*Knox & Reed*, for libelant.

*D. T. Watson*, for respondent.

ACHESON, J. This is a suit upon an alleged contract of insurance on the steam-boat De Smett. The libel presents the case in a twofold aspect; one of its paragraphs alleging that the contract was consummated by the issuing of a policy of insurance, and another paragraph stating the cause of action as resting upon an agreement to insure the vessel against marine risks upon the terms usually contained in the defendant's policies. The answer, while admitting that an application for insurance upon the De Smett was made to the defendant, and thereupon certain negotiations took place, denies that any contract of insurance, or any agreement to insure, was concluded or entered into; and, by way of further defense, the answer alleges that important and material facts were omitted from the application, and concealed from the defendant. The essential facts of the case are as follows: On the 15th of April, 1886, in consequence of a collision with one of the piers of the bridge spanning White river, three miles above Newport, Ark., the De Smett was very

seriously injured and disabled. Nearly the whole of one side of the boat, including the wheel, was torn off, and her upper works were badly damaged. Such was the extent of the damage that the boat could not run at all. She was taken to a point on the west bank of White river, opposite Newport, and tied up for repairs. Her crew was discharged, and she was left in the custody of two watchmen. There she remained in this disabled condition, without master, officers, or crew, until the evening of June 12, 1886, when she was destroyed by fire. At that time no repairs had yet been made to the boat, but carpenters had been at work getting her ready therefor. The evidence shows that with the force at work it would have taken at least one month to complete the repairs. The boat's engines and pumps were not in working order at the time of the fire, and, if they had been, there was no one on board to run them. Shortly before June 7, 1886, application in behalf of Mrs. Josephine Harry, the owner of the De Smett, for a line of insurance upon the boat, was made to Gilbert Raine, an insurance agent and broker at Memphis, Tenn. Raine, however, was not the agent of the defendant, the City Insurance Company of Pittsburgh. As an insurance broker, in a number of instances he had placed fire risks (but never a marine risk) in the defendant company. In no other respect or sense had he ever acted as agent for the defendant. In the several instances in which he had placed fire risks with the defendant, he deducted out of the premiums the usual broker's commissions. In the present case Raine's dealings, about to be mentioned, with the defendant, were altogether in the capacity of an insurance broker. At the time of the application to Raine for insurance on the De Smett, he knew that she had met with an accident, and was undergoing repairs, or was about to be repaired; but it is not clear that he was fully informed as to the extent of her disability, or knew exactly where she then was. On June 7, 1886, Raine mailed the following letter, which was received by the defendant in due course of the mail:

"Memphis, Tenn., June 7, 1886.

"*City Ins. Co., Pittsburgh, Pa.*—Dear Sirs: Inclosed please find survey of Str. 'De Smett,' on which I would like your line. She will run in White river, Ark.,—the best steamer in the West,—running to Memphis, of course. I will put my own Co.—Phœnix of Brooklyn—on at same rate. I can recommend your line. If acceptable, bind some, and advise me by wire, (day message,) & forms will be forwarded. Hull risk—fire and marine. Ruling rate on White river 10. Capt. Harvy is an excellent man, and has been running in White river for a great many years. Yours truly,

"Gilbert Raine, per Glass."

The survey, which was without date, transmitted in the above letter, purported to have been made upon an examination of the De Smett at Memphis, and contained a full and detailed description of the boat, her engines, hull, etc. It named her owner and master, and stated her value at $10,000, and asked for $5,000 insurance. It contained nothing whatever indicating that the boat was in a disabled condition, or laid up, or was undergoing repairs. The defendant had no information respecting

the boat other than what appeared in the above letter and the accompanying survey. On the back of Raine's original letter of June 7, 1886, which is an exhibit in this case, there is the following memorandum:

"*Gilbert Raine, Memphis, Tenn.* Can bind five thousand on De Smett. Answer amount wanted here.

"JOHN R. GLONINGER, V. P., per W. G."

W. M. Grace, an employe in the defendant's office, testifies that this memorandum is in his handwriting; but he remembers nothing whatever about it, and cannot state whether it is a copy of a telegram. Mr. Gloninger, who attended to this business for the defendant, died after this suit was brought, and before the libelant's evidence was closed. His testimony was never taken. Mr. Raine's attention was not called to this particular matter, and he did not testify that he received such message. There is no express evidence that such a message was sent. On June 9, 1886, Raine sent, and the defendant received, the following telegram:

"MEMPHIS, TENN., June 9, 1886.

"*To John R. Gloninger, Vice Prest. City Ins. Co., Pgh.:* Write fifteen hundred on the De Smett in the City.        GILBERT RAINE."

On June 12, 1886, Raine sent, and the defendant received, the following telegram:

"MEMPHIS, TENN., June 12, 1886.

"*To City Ins. Co.:* What is the matter with De Smett hull policy. Has it been mailed. Wire answer at once.        GILBERT RAINE."

This telegram was received at Pittsburgh at 1:44 o'clock P. M., but at what hour it was delivered to the defendant does not appear. On the same day, but at what hour does not appear, the defendant mailed at Pittsburgh the following letter, addressed to Gilbert Raine, at Memphis, Tenn.:

"PITTSBURGH, June 12, 1886.

"*Gilbert Raine, Esq., Memphis, Tenn.*—DEAR SIR: We received your telegram to send policy of De Smett. As you stated you would send wording, we were waiting on it. We now send policy in response to your telegram. If it is incomplete or incorrect, return it for correction.        Yours, Truly,

"JOHN R. GLONINGER, Vice Prest."

Inclosed in this letter was the defendant's policy of insurance on the De Smett for $1,500, dated and purporting to have been executed June 12, 1886, but running from June 9th for one year, giving the boat "permission to navigate the White river," only. The policy contains the following, which is one of the usual clauses of the defendant's marine policies:

"And the assured also agrees that the vessel aforesaid is, and shall be, kept at all times during the continuance of this policy tight and sound, and her seams properly caulked, and sufficiently found in tackle and appurtenances thereto, and competently provided with master, officers, and crew, and in all other things and means necessary for the safe navigation thereof."

On the same day (June 12th) Raine sent, and the defendant received, the following telegram:

"MEMPHIS, TENN., June 12, 1886.

"*To City Ins. Co.:*   Make De Smett policy cover Mississippi river and tributaries below Cairo, excepting Arkansas and Red.   Average ten per cent.

GILBERT RAINE."

This telegram was received at Pittsburgh at 4:10 o'clock P. M., but at what hour it was delivered to the defendant does not appear.   No answer to either of the above telegrams of June 12th has been produced. Raine, however, testifies that he is quite certain he received on that day a telegram from the defendant to the effect that a policy for $1,500 had been written; but he is not able to state its precise contents.   The De Smett took fire about 9 o'clock P. M., on June 12th, and was burned to the water's edge.   The premium of insurance was not paid; but shortly after the fire it was tendered, accompanied with a demand for the policy, to Raine, who, acting under instructions from the defendant, refused to receive it, or to deliver the policy to Mrs. Harry.

Upon these facts two questions arise, viz.—*First,* whether there was any completed contract; and, *second,* whether there was concealment or withholding of such material facts as would avoid the risk.

1. I do not see how it can be claimed that the correspondence prior to June 12th imports a completed contract.   If it be assumed (in the absence of direct proof) that the defendant sent to Raine a message corresponding with the memorandum found on the back of his letter, viz., "Can bind five thousand on De Smett.   Answer amount wanted here," —still, this merely signified that the defendant could place at Pittsburgh the entire line of insurance desired.   It was not a definite proposal on the part of the company to issue its policy for $5,000, and, if it could be so regarded, the offer was not accepted.   The company, then, was not bound by Raine's order of June 9th, viz., "Write fifteen hundred on De Smett in the City," without express acceptance on its part, or some act implying its assent.   Moreover, Raine's original communication did not furnish the entire basis for the proposed contract.   He wrote, "And forms will be forwarded."   By this, it is not to be doubted, he intended something more than any customary or formal provision of an insurance policy.   The defendant understood (and rightly, too) that Raine meant that he would furnish some additional matter of substance to be incorporated into the contract.   Hence, on June 12th, Mr. Gloninger wrote, "As you stated you would send wording, we were waiting on it."   The sequel shows that the promised and expected "wording" was the provision as to the waters the policy should cover, which was one of the essential terms of the contract.   This was not communicated to the defendant until the receipt of Raine's second telegram of June 12th.   Did the defendant become bound when its policy of insurance was deposited in the post-office?   In disposing of this question, it must be remembered that the burden of proof is upon the libelant to show that mutual assent of the parties without which there could be no contract.   The correspondence which took place on June 12th affords, I think, internal evidence that the policy was executed in the brief interval between the re-

ceipt of Raine's two telegrams of that date.  But whether the policy was actually deposited in the post-office before Raine's second telegram reached the defendant, cannot be determined with certainty under the proofs.  Upon this point we can do little more than conjecture.  Here, death has deprived us of Mr. Gloninger's testimony, which might have shown how the fact was.  It is, however, undeniable that the policy mailed covered White river only, whereas the policy wanted and ordered was one covering the "Mississippi river and tributaries below Cairo, except Arkansas and Red" rivers.  The policy written, be it observed, did not conform even to the incomplete information contained in Raine's letter of June 7th.  He had therein stated, "She will run in White river, Ark., * * * running to Memphis, of course."  But the policy, as executed, confined the boat to White river, and thus precluded her from running to Memphis.  Evidently Mr. Gloninger was uncertain whether the parties understood each other with respect to the scope of the proposed risk, for in his letter to Raine accompanying the policy, he wrote, "If it is incomplete or incorrect, return it for correction."  It was thus forwarded, not as a concluded contract, but for acceptance by the applicant if its terms were satisfactory.  That it would have been declined had not the loss occurred before the policy reached Memphis, there can be little doubt.  Now, as the policy as executed was not conformable either to the requirements of Raine's letter of June 7th or the directions of his second telegram of June 12th, it is quite clear that it did not bind Mrs. Harry.  But if there was no contract on her part, there was none on the part of the defendant.  *Insurance Co.* v. *Young's Adm'r*, 23 Wall. 107.  It is indispensable to the constitution of any contract that its terms should be settled by the concurrent assent of both parties.  Id.; *Hamilton* v. *Insurance Co.*, 5 Pa. St. 342.  I am, then, of the opinion that the risk never attached to the De Smett, because the minds of the parties had never met.

2. But if the evidence justified a different conclusion, could the libelant succeed in this suit?  The applicant for insurance upon the steamer De Smett was certainly bound to disclose to the underwriter all matters within her knowledge material to the risk.  *Kohne* v. *Insurance Co.*, 1 Wash. C. C. 158; 1 Phil. Ins. §§ 531, 537, 546.  Under the proofs, Gilbert Raine must be treated as the representative of Mrs. Harry in effecting the insurance, and by his conduct in that behalf she is bound.  Story, Ag. § 31.  A broker employed to procure insurance must be regarded in that matter as the agent of the party who so employed him; and his concealment from the underwriter of any material fact, whether the suppression be unintentional or willful, is the concealment of his principal.  Whart. Ag. § 708; May, Ins. §§ 122, 123.  Now, I have no hesitation in holding that the damaged and broken condition of the De Smett, and her situation generally, as hereinbefore described, were facts materially affecting the risk, and should have been disclosed to the defendant.  This conclusion I have reached without regard to the opinions to that effect of the underwriters who were examined as experts.  This

was not the case of a vessel undergoing ordinary repairs. The injury which the De Smett had sustained was unusual, and most serious; and all the circumstances of the case were peculiar and extraordinary. So disabled was the boat that she was absolutely incapable of running. The dealings of the parties here, even in the absence of express stipulation, could be fairly referred only to a steam-boat at least reasonably fit to be navigated. But in view of the clause of the policy hereinbefore quoted, the case need not be rested upon a mere implication; for if insurance was effected here, it must be regarded as having been made upon the terms and conditions expressed in said clause, whether the libelant stands on an executed policy or upon an agreement for insurance. *Insurance Co.* v. *Robinson*, 56 Pa. St. 256. That clause stipulated that the steam-boat was "tight and sound," and that she was "competently provided with master, officers, and crew, and in all other things and means necessary for the safe navigation thereof." But as the boat did not fulfill any of these terms and conditions, and the real facts were concealed from the defendant, the libelant's case must fail, even were it otherwise good. Let a decree be drawn dismissing the libel, with costs.