[No. 12553.   Department One. — September 6, 1889.]

JACKSON HART ET AL., APPELLANTS, v. BRITISH
AND FOREIGN MARINE INSURANCE COM-
PANY, RESPONDENT.

AMENDMENT OF ANSWER — DISCRETION. — It is a proper exercise of discre-
tion to allow an answer to be amended so as to permit the introduction
of written evidence by the defendant which was well known to plain-
tiffs long before the trial, and the production of which is eminently just,
in order to settle the rights of the parties upon the merits.

MARINE INSURANCE — CONCEALMENT OF MATERIAL FACT BY PERSON AS-
SURED — RESCISSION OF POLICY. — When an applicant for marine
insurance upon a barge which is overdue has information as to mate-
rial facts concerning the probable loss of the barge, which he fails to
communicate to the insurance company, such failure is a concealment of
a material fact which the assured ought to. communicate, and entitles
the insurance company to rescind the contract of insurance.

APPEAL from a judgment of the Superior Court of
the city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion.

*Henry E. Highton,* and *W. C. Belcher,* for Appellants.

*Milton Andros,* and *Page & Eells,* for Respondent.

FOOTE, C. — This action was brought to recover on an
insurance policy for a marine loss on a cargo of wheat
shipped on a barge called the Grand Island for a voyage
from Colusa to San Francisco.   The owners of the wheat
were Messrs. Hart and Harrington, the plaintiffs here.

Some time about the middle of the night or in the
early morning of the tenth day of December, 1878, the
barge suddenly sank in the bay of San Francisco, when
just below Red Rock, a well-known place in that body
of water.   Her cargo, consisting of the plaintiffs' wheat,
was a total loss.   The night was not very dark, and a
light north wind was blowing.   The barge was being
towed, about the usual course for such vessels over that

water-way, and there is nothing to show any sunken rocks, or other obstructions to navigation, which would have caused her loss at the place where she was overtaken by disaster.

Her pilot does not, from his testimony, seem to have any definite idea of the cause of her loss, except that she sprung a leak, the origin of which he was unable to determine. When, afterward, the craft was raised, and her bottom examined, it was found that three of her planks were broken and splintered.

The defenses set up to the action were: 1. That the barge was unseaworthy; 2. That the plaintiff Hart at the time he made application for the policy, fraudulently concealed from the defendant the facts known to him, viz., that the barge was overdue and probably lost, of which facts the defendant had no knowledge, and which at the time it had no means of knowing or ascertaining; 3. That Hart, at the time of the application, had knowledge of the loss of the barge, which fact, then unknown to and beyond the reach of the defendant, he fraudulently concealed. Which facts, it was alleged, avoided the policy.

After the plaintiffs had rested their case, the defendant was not allowed to introduce proffered evidence to sustain the issues of fraudulent concealment. The plaintiffs claiming, and the court concurring, that, assuming such facts as alleged to be true, they did not in law avoid the policy, but gave the defendant the right only of rescinding the contract, and that as the exercise of that right had not been pleaded by way of defense, the proposed evidence was inadmissible. By permission of the court the answer was so amended as to allege the required rescission. The trial was prosecuted to a conclusion, the jury finding generally "in favor of defendant." From the judgment, and an order refusing a motion for a new trial, this appeal is taken.

The reasons brought forward why the judgment and

order should be reversed are, because, as is claimed: 1. The court committed errors in ruling on the allowing of amendments to the pleadings, and in the admission of evidence; 2. The insufficiency of the evidence to sustain the verdict; 3. The refusal of the court to charge as requested by the plaintiffs.

We perceive no abuse of discretion in allowing the amendment of the answer. The evidence sought to be admitted was of a written character, well known to the plaintiffs long before the trial; they could not have been surprised by its production; and it was eminently just, in order to settle the rights of the parties upon the merits, that the proof should be admitted.

Conceding, without deciding, that Mr. Touchard's evidence as an expert, as to what effect the knowledge of the barge being overdue would have had in determining the amount of premium, was inadmissible, yet the plaintiffs suffered no injury. The witness stated that the time during which it was shown in evidence the barge in question was overdue would not have influenced the amount of the premium.

We perceive no necessity to go into the question of whether the evidence was insufficient to support the verdict as to the defendant's first ground of defense, viz., that when the barge left Colusa to begin her voyage she was unseaworthy, because we think the evidence does support the verdict, upon the ground that when Hart procured the policy he knew and failed to communicate to the defendant, of which it was ignorant, the material facts and information in his possession concerning the *probable loss* of the overdue barge.

But it is claimed by the plaintiffs, as a matter of law, that such facts as Hart possessed and failed to communicate were not material facts as understood in the law of insurance.

The sections of the Civil Code bearing upon the point raised are as follows: —

"SEC. 2561.    A neglect to communicate that which a a party knows and ought to communicate is called a concealment.

" SEC. 2562.    A concealment, whether intentional or unintentional, entitles the injured party to rescind a contract of insurance.

" SEC. 2563.    Each party to a contract of insurance must communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty."

According to the evidence on the part of the defendant Hart, the plaintiff, when he applied for the policy of insurance, said nothing about the arrival or non-arrival of the barge on which was the wheat which he wished insured.    He desired *to pay* for the policy when the risk was passed by the manager of the marine department of the agents for the insurance company.    Woods, the manager, told him to let it lie as usual until his account was furnished.    Hart said he preferred to pay for it. Woods saw Hart again that day, about noon, and asked him about the circumstances of the insurance, it having then become known that the barge was lost.    Hart told Woods that he (Hart) was aware at the time of the placing the insurance that *a barge* was lost, but that he did not know that it was this *special barge.*    He admitted this fact before Mr. Balfour, one of the agents for the insurance company, but said that he did not consider himself bound to make that known.    He was then informed that the insurance was not obtained by fair means, and that the company would not admit its responsibility.    "Hart expressed himself as accepting the situation; that he expected it; that he would press his claims, and whoever won, it was all right."

Thereupon a letter from the agents of the company was handed Hart by Woods, rescinding the contract of

insurance, and tendering Hart the premium he had paid them. Hart took the letter, but declined the money.

Prior to Hart applying for the policy on the morning of the loss of the barge containing his cargo of wheat, he was talking with the consignee of the barge, Mr. McNear, and was then asked by Mr. Marble, who was present, if this wheat was insured. Hart said "No"; that he was just talking with McNear about it. Marble remarked: "If you are going to get insured at all, you had better get insured pretty quick." Hart or McNear or both asked "Why." Marble answered that he had been round the water-front, and that he had heard a rumor that a barge had been lost near Red Rock. Marble did not know what barge, or what kind of a barge. This was about 9:30 in the morning.

Mr. McNear stated that between eight and ten o'clock on that morning Hart came to his office and asked if his barge was reported; witness said not; there was some discussion. Hart stated that he had always insured, except that time. Something was said about the barge being overdue; *that it was a good time to get her insured.* McNear's clerk, Marble, came in, and said a barge was reported lost up above Red Rock. McNear told Hart he had better go and get his barge insured. Hart then left the office.

On cross-examination, McNear stated that he did not know whether Hart said he would insure before the clerk came in. *Hart had been expecting the barge for one or two days.*

The barge was expected to arrive on the morning of the taking out of the policy, before it was taken out, which took place about 9:30, a. m., of that day. It also appeared in evidence that usually if a barge was due early in the morning, if it was not heard from by ten or eleven o'clock, the agent of a certain wood company would make inquiries; that such barges were sometimes expected for a week, and that Hart and McNear, his

broker, were expecting the particular barge in question, which was due when the conversation of McNear, Marble, and Hart took place.

There was a conflict in the evidence, as appears from the bill of exceptions, as to whether the plaintiffs communicated to the defendant, when they applied for the policy, that the barge was overdue, if she was overdue; but the plaintiffs conceded that at the time of the application they did not inform the defendant that they had heard the rumor communicated by Mr. Marble, or any information whatever as to the loss of the barge, and it did not appear that they possessed any information of such loss beyond that furnished by Mr. Marble.

The fact that Hart was inquiring about the barge when she was some hours overdue went to show that he was perturbed over the matter. Immediately upon hearing what Marble communicated he sought the insurance office to get a policy on his property. This, and his anxiety evinced in insisting in paying for it, out of the usual way, his neglect to inform the agent of what he had heard,—all looked as if he feared that his wheat was lost, and wished, if possible, to saddle its loss on the insurance company, who knew nothing, and could have known nothing, of what Marble had said and which Hart deemed material to the risk. Was this fair toward the company? Was it not Hart's duty to place the defendant in possession of the knowledge which made him so precipitate and persistent in getting out a policy before it should be absolutely known that the barge was lost? Is it not fair to presume that if he had done so the insurance company would have been as swift to decline to issue the policy as Hart was earnest to obtain it? The jury evidently thought so. They heard all the evidence and saw the witnesses, and we are not prepared to say that the uncontradicted evidence of McNear and Marble as to Hart's acts in the premises, together with the evidence of the other witnesses, with which there is some

conflict in the evidence, did not warrant the conclusion arrived at. The conviction is irresistible that Hart feared his wheat was lost, hoped to get out a policy before the loss was known, and did not deal fairly with the defendant, because he did not place the insurance company in a situation, such as he occupied, to know all the necessary facts and circumstances believed by Hart to be material attending the non-arrival of the barge. Such, at least, is the view that an unbiased and fair-minded jury may have taken of the matter from all the evidence in the record, and we are not disposed to interfere with their determination.

We perceive nothing in the action of the court as to the matter of instructions which is erroneous, and advise that the judgment and order be affirmed.

Vanclief, C., and Hayne, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.