[Civ. No. 9689.   First Appellate District, Division Two.—May 1, 1935.]

B. CARL TREMAINE, Respondent, v. PHOENIX ASSUR-
ANCE COMPANY (a Corporation) et al., Appellants.

Carroll Single and Stanley J. Cook for Appellants.

John L. Schaefer for Respondent.

STURTEVANT, J.—The plaintiff sued to recover on
several insurance policies. The defendants denied certain
allegations contained in the complaint and each company
pleaded two affirmative defenses, concealment and that the
barge insured was not seaworthy.  As to the first affirma-

tive defense the trial court found the facts as alleged by the defendants. As to the other affirmative defense it found the probative facts but did not find on the ultimate fact. Continuing it made conclusions of law in favor of the plaintiff. At this time the defendants contend that the judgment should be reversed and that the trial court should be directed to enter judgment for the defendants. That contention we think must be sustained.

The things insured were the engines on a barge, W. T-B No. 60. The barge was, and for several years had been, at San Quintin, Mexico. In 1929 it was insured. In 1930 the insurance was renewed. By the terms of the policy the movements of the barge were limited to a zone having a radius of seven miles in and about San Quintin. Desiring to take the barge to San Francisco the owners applied to have the policies modified. That matter was taken up in 1930 and the modification was accomplished March 13, 1931, upon the payment of an additional premium. Among others the court made the following findings:

"'That it is true that at the time said W. H. Worden applied for and obtained the extended insurance herein concerned, said barge was located in the harbor of San Quintin, Mexico. Said barge was then and there lying on the bottom of the channel in about twenty-one (21) feet of salt water, with her aft hold and engine room submerged, and had been so situated for at least four (4) months prior to that time. That thereafter the said W. H. Worden caused the said barge to be refloated and in so doing caused to be cut two small holes in her main deck through which pumping hose was inserted for the purpose of de-watering the said craft. Said barge and its two main Diesel engines were then and there in need of repair and were unable to function without such repairs. That a tail shaft to one of the engines was broken. That all of said facts and conditions were known to said W. H. Worden at the time the application for the extended insurance was made by said W. H. Worden to M. Thompson & Company. That M. Thompson & Company were marine insurance brokers in the city of San Francisco, California, and secured the said policies of insurance at the request of W. H. Worden. That in securing the said extended insurance, said M.

Thompson & Company disclosed such facts as are represented in certain documents now in evidence to Bowring & Company, marine insurance brokers of London, England. That no other facts were then known to defendants, or any of them, save facts contained in said documents, which facts were the only facts disclosed to C. T. Bowring & Company, brokers, in London, England." An examination of the documents referred to in the last two sentences of said findings shows that they are silent as to the then condition of the barge. The defendants quote finding XI and cite the foregoing facts and contend that the trial court should have drawn conclusions of law therefrom in their favor and should have ordered judgment for them. The plaintiff makes no direct reply. He propounds six questions. Not all of them are pertinent to the record. We must confine ourselves to an attempt to determine the questions presented by the record.

Under the facts recited above M. Thompson & Company was acting as the agent of the insured; and C. T. Bowring & Company was acting as the agent of M. Thompson & Company. The most that can be said is that Mr. Worden disclosed to M. Thompson & Company, his own agent, the facts. But there is no evidence that any of the facts happening after the original policies were written were communicated to the insurers.

In every marine insurance a warranty is implied that the ship is seaworthy. (Civ. Code, sec. 2681.) That rule applies to a modification of a contract of insurance as well as to the original contract. (Civ. Code, sec. 2582.) As a general rule, unless inquiry is made the insured need not communicate such facts as are covered by a warranty, express or implied. (Civ. Code, sec. 2464, subd. 3; 2 Duer on Insurance, p. 572 et seq.) But to that rule there are well-defined exceptions. In 2 Duer on Insurance, at page 435, the author says:

"But, although where the assured acts with an entire good faith, he is not bound to make any communication relative to the condition of the ship, it by no means follows, that when he knows, or has positive information, that the vessel is unseaworthy, the implied warranty of seaworthiness will justify him in procuring an insurance, with-

out disclosing to the underwriter his knowledge or information. An unseaworthy ship, it is not to be doubted, may be insured. When the facts are made known to the underwriter, he may, for a premium that he deems to be adequate, assume the risk; but the attempt to cast upon him such a risk, without his knowledge or consent, is an evident fraud, and it is this fraud that the assured, by his concealment, in the cases I have supposed, attempts to practice. It is his fraudulent design to charge the underwriter with a loss, not justly recoverable under the policy. His expectation must be, that in the event of a loss, the underwriter will not be able to defeat its recovery by evidence, that the implied warranty of seaworthiness had been broken; for if he had believed that the facts known to himself would be discovered by the underwriter, it is certain, that he would not have effected the policy. He would not have paid a premium for an insurance, that he knew, could in no event avail to his indemnity. Hence, a policy, where the ship is unseaworthy, and the fact is known to and suppressed by the assured, is conclusive evidence of a meditated fraud.

"It may possibly be thought that these remarks, admitting them to be just, have no practical value, since, where the underwriter rests his defense on the unseaworthiness of the ship, if the fact is established, he is discharged, and an inquiry into the knowledge of the assured, at the time the policy was effected, becomes immaterial; but this is a mistaken view of the subject. Where a breach of the implied warranty is proved, it may still be material to prove the fraud, and where no such breach is shown, the fraud may still exist, and the proof be given to avoid the policy. If the ship was, in fact, unseaworthy when the risk commenced, the breach of the implied warranty would prevent the policy from attaching, and in cases exempt from fraud, where the policy has not attached, the assured is entitled to a return of the premium. But, if the facts that falsify the warranty were known to the assured when the policy was effected, his fraud, in the concealment, might properly be shown to bar his recovery of the premium." According to the note in the commissioner's edition of the Civil Code, section 2569 thereof, is a statement of that same rule. In the case of *Hamblet* v. *City Ins. Co.*, 36 Fed. 118, a set

of facts almost parallel to the facts we have recited was involved. The De Smett, at the time the insurance was written, was in need of major repairs and could not run at all. The owner applied for insurance and did not disclose the disabled condition of the vessel. Shortly after the insurance was written the vessel burned. The owner sued to recover on the policy. He was denied relief. On page 122 the court said:

"But if the evidence justified a different conclusion, could the libélant succeed in this suit? The applicant for insurance upon the steamer De Smett was certainly bound to disclose to the underwriter all matters within her knowledge material to the risk. (*Kohne* v. *Insurance Co.*, Fed. Cas. No. 7922; 1 Wash. C. C. 158; 1 Phil. Ins., secs. 531, 537, 546.) Under the proofs, Gilbert Raine must be treated as the representative of Mrs. Harry in effecting the insurance, and by his conduct in that behalf she is bound. (Story, Ag. sec. 31.) A broker employed to procure insurance must be regarded in that matter as the agent of the party who so employed him; and his concealment from the underwriter of any material fact, whether the suppression be unintentional or wilful, is the concealment of his principal. (Whart. Ag., sec. 708; May, Ins., secs. 122, 123.) Now, I have no hesitation in holding that the damaged and broken condition of the De Smett, and her situation generally, as hereinbefore described, were facts materially affecting the risk, and should have been disclosed to the defendant. This conclusion I have reached without regard to the opinions to that effect of the underwriters who were examined as experts. This was the case of a vessel undergoing ordinary repairs. The injury which the De Smett had sustained was unusual, and most serious; and all the circumstances of the case were peculiar and extraordinary. So disabled was the boat that she was absolutely incapable of running. The dealings of the parties here, even in the absence of express stipulation, could be fairly referred only to a steam-boat at least reasonably fit to be navigated." In the case of *Russell* v. *Thornton*, 4 H. & N. 788; 157 Eng. Rep. Reprint, 1053, the owner of a disabled vessel negotiated insurance thereon. The vessel was lost and he sued to recover on the policy. Before he applied for the insurance he was

advised the vessel was aground. That fact was not disclosed to the insurer. In sustaining the judgment of the trial court in favor of the defendant, at page 1057 the court said:

"We are all of opinion that the defendant is entitled to judgment. The first question is, whether the letter of the 6th of January, 1857, was a material one to be communicated to the defendant by the plaintiff. As to that, there really is no doubt about it. It is impossible to contend that a letter stating the fact of the vessel having been on shore for twenty-two hours, beaten about by the wind and the waves, and in such a condition as to be in a sinking state when she was got off, is immaterial; or that the fact was one upon which the underwriters had not a right to form an opinion in taking a risk upon a policy in which there was no warranty of seaworthiness. It would have been all-important, even if there had been a warranty of seaworthiness. The underwriters might well say, 'You may patch her up, and make her seaworthy, but she will never be as good a ship as she was before she met with this calamity.' It was therefore obviously a letter that ought to have been communicated to the defendant." As to the rule in general, it is stated in 38 C. J. 1051, as follows: "Contracts of marine insurance are *uberrimae fidei* and there is an obligation voluntarily to disclose all facts and circumstances which are material to the risk and not within the knowledge of both parties. This obligation is not limited to disclosures to be made by insured but includes also the underwriter." On error, the case later came before the Exchequer Chamber, 158 English Reports Reprint, 58. At page 60 the court said: "As to the first count, we are all of opinion that there was no waiver of the omission to communicate the information material to the risk, because a person cannot waive that which he does not know; and it was not until after the policy was effected that the defendant became aware of the state of the ship." (See, also, 3 Joyce on Insurance, sec. 1768; 2 Duer, 380.) The latest expression on the subject that has been called to our attention is contained in *Btesh* v. *Royal Ins. Co., Limited, of Liverpool,* 49 Fed. (2d) 720, where it is said: "It is not necessary that the assured should intend a fraud upon the underwriter; his duty is positive to disclose." The author

of the passage, quoted from 38 C. J. 1051, in his notes cites a long list of authorities. Among others, he cites *Hart* v. *British etc. Ins. Co.*, 80 Cal. 440 [22 Pac. 302]. While not directly in point the principle involved in the instant case was passed on in that case. Hart owned a cargo of wheat which was supposed to be en route from Colusa to San Francisco on board of a barge. On the morning that Hart thought the barge should arrive he commenced to make inquiries. He heard a barge had been lost at the north end of the bay. At once he called on the defendant and applied for insurance. At no time did he disclose the information he had received about a barge having been lost as above stated. The defendant issued its policy, but later it denied liability under it. The plaintiff sued to recover under the policy and the defendant pleaded a failure to disclose. From a judgment in favor of the defendant the plaintiff appealed. The court cited sections 2561–2563 of the Civil Code and held that the evidence sustained the judgment. In the case of *General Acc. etc. Corp.* v. *Industrial Acc. Com.*, 196 Cal. 179 [237 Pac. 33], the liability of the plaintiff under its policy to indemnify Vessels, an employer, was involved. After one of his employees, Lilenquist, had met with an accident from which he died, and after Vessels knew of the fact, he called at the office of the petitioner's representative, paid the premium, and took delivery of his policy. But he did not disclose the fact that the accident had happened. The court held the facts showed concealment. At page 189, the court said: "Section 2563, *supra*, was applied by this court in *Hart* v. *British etc. Ins. Co.*, 80 Cal. 440 [22 Pac. 302], an action to recover upon a policy for marine insurance upon a barge and a cargo of wheat. The applicant for insurance had information concerning the probable loss of the barge but failed to communicate this information to the insurance company. As a matter of fact, the barge was lost at the time the policy was issued. No inquiry was made by the insurance company as to the safety of the barge and cargo, but the court nevertheless held that the failure on the part of the insured to communicate the information in his possession to the insurer, constituted a concealment of a material fact which the assured was bound to communicate and this failure entitled the insurance com-

pany to rescind the contract of insurance." Further down on the same page the court quoted with approval as follows: "In *California etc. Co.* v. *New Zealand Ins. Co.*, 23 Cal. App. 611 [138 Pac. 960], it was held: 'Rescission is not the exclusive remedy of one who has become entitled to avoid a contract by reason of acts or omissions of the other party to it which are fraudulent in their nature. He may cancel the contract by its rescission; or he may seek affirmative relief in a court of equity for any injury, sustained by the wrongful act or omission of the other; or he may set up the fraud by way of defense to an action brought to enforce the apparent liability.' " (See, also, *Strangio* v. *Consolidated Indemnity & Ins. Co.*, 66 Fed. (2d) 330.) While the last three cases did not involve marine risks it will hardly be contended that as to the latter the rule is less stringent than in other lines of insurance. We therefore conclude that the facts concerning the submersion of the barge at San Quintin, its injuries, and its need of repairs, were material subjects and should have been disclosed to the defendants, but, as they were not, such failure constituted, within the law, concealment and as such a complete defense.

The plaintiff cites and relies on *California Co.* v. *New Zealand Ins. Co.*, 23 Cal. App. 611 [138 Pac. 960]. An examination of that case discloses that the facts were materially different from the facts in the instant case. Nothing we have said is at variance with it. On the other hand the case has much in favor of the case as made by these defendants.

The judgment is reversed and the trial court is directed to enter judgment on the findings as made in favor of the defendants.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1935.

Shenk, J., voted for a hearing.